# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

_____

DANNY THOMPSON, ALVIN
PAUL AND WILLIAM MORALES,

        Plaintiffs,

vs.                          NO. _____

SHERMAN SINGLETON and
SINGLETON MOBILE HOMES
SALES, INC.,

        Defendants.

### COMPLAINT FOR FAILURE TO PAY MINIMUM WAGE AND OVERTIME AND FOR WRONGFUL TERMINATION

    Plaintiffs, Danny Thompson, Alvin Paul and William Morales, through their counsel of record, Wayne R. Suggett Attorney at Law, P.C. and Kristin Harrington, for their complaint against Defendants Sherman Singleton and Singleton Mobile Homes state:

### Jurisdiction and venue.

    1.    Plaintiffs are residents of San Juan County, New Mexico.

    2.    Defendant Sherman Singleton is a resident of San Juan County, New Mexico.

1

3. Singleton Mobile Homes Sales, Inc. is a New Mexico for profit corporation with its principal place of business in San Juan County, New Mexico.

4. Singleton Mobile Homes Sales, Inc. is engaged in "commerce" as defined by 29 U.S.C. §203 and is an "enterprise" as defined in Section 203(s) with annual gross sales of at least $500,000.00.

5. The Plaintiffs, individually, have claims for failure to pay minimum wage and overtime wages in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 206-207, and for retaliation in violation of 29 U.S.C. §215.

6. The Plaintiffs, individually, also have New Mexico state law claims for failure to pay minimum wage, failure to pay overtime, and for retaliation under the New Mexico Minimum Wage Act, NMSA 1978, §§ 50-4-22 and 50-4-26.1 and New Mexico's retaliatory discharge common law.

7. This Court has jurisdiction over the subject matter and the parties under 28 U.S.C §§1331 and 1367 and venue is proper in this Court under 28 U.S.C. §1391.

## Background facts: Danny Thompson.

8. Danny Thompson (Mr. Thompson) began working for Defendants in approximately July, 2014.

9. He was hired to provide contractor and "handyman" services for Defendants.

10. Mr. Thompson would help set up mobile homes on lots, would perform carpentry, plumbing, electrical and mechanical repairs for the rental units. He would paint, remove and install carpet, level the mobile homes and perform other necessary services on behalf of Defendants.

11. Mr. Thompson would report to each morning at Singleton Mobile Homes Sales premises. He signed and signed out, reporting his hours on a daily basis. When he was late, Defendant Singleton or another staff member would warn him.

12. He would take direction concerning where and when to work by either Defendant Singleton or one of his staff.

13. When a particular job was finished, Mr. Thompson would return to Singleton Mobile Homes for another assignment.

14. When he did not have an assignment working on a particular mobile home or lot, Mr. Thompson would perform work at Singleton Mobile Homes Sales premises.

15. Mr. Thompson typically worked Monday through Saturday from 8 a.m. until 6 p.m.

16. While his standard hours were 8 a.m. to 6 p.m., it was not uncommon for Mr. Thompson to work until 8 or 9 p.m. if there was a problem with a rental until. In short, he worked until the job was done.

17. It was also not uncommon for Mr. Thompson to work a half-day on Sunday at Mr. Singleton's, or a member of his family's, property.

18. Mr. Thompson was initially paid $50.00 a day, $25.00 for a half day. That went up to $60.00 a day, $30.00 a half-day until his termination on January 2, 2017.

19. Defendant Singleton fired Mr. Thompson on January 2, 2017.

20. Approximately one or two months before Mr. Thompson's termination, Plaintiff William Morales filed a workers' compensation complaint against Defendants. Mr. Thompson began questioning why they were not treated as employees and were not paid overtime as required by law.

21. Defendant Singleton told Mr. Thompson that he was fired for "being on William's [Plaintiff William Morales] side and he did not want anyone working with him who was on William's side." Singleton told Mr. Thompson to "listen here, I would be careful. I have money and I know people" so "go back to the reservation and disappear."

## Background facts: Alvin Paul, Jr.

22. Plaintiff Alvin Paul, Jr. (Mr. Paul) was hired by Defendant Singleton in approximately 2010.

23. He was hired to provide contractor and "handyman" services for Defendants.

24. Mr. Paul would help set up mobile homes on lots, would perform carpentry, plumbing, electrical and mechanical repairs for the rental units. He would paint, remove and install carpet, level the mobile homes and perform other necessary services on behalf of Defendants.

25. Mr. Paul would report to each morning at Singleton Mobile Homes Sales premises.

26. He would take direction concerning where and when to work by either Defendant Singleton or one of his staff.

27. He signed and signed out, reporting his hours on a daily basis. When he was late, Defendant Singleton or another staff member would warn him.

28. When a particular job was finished, Mr. Paul would return to Singleton Mobile Homes for another assignment.

29. When he did not have an assignment working on a particular mobile home or lot, Mr. Paul would perform work at Singleton Mobile Homes Sales premises.

30. Mr. Paul typically worked Monday through Saturday from 8 a.m. until 6 p.m.

31. While his standard hours were 8 a.m. to 6 p.m., it was not uncommon for Mr. Paul to work until 8 or 9 p.m. if there was a problem with a rental until. In short, he worked until the job was done.

32. It was also not uncommon for Mr. Paul to work a half-day on Sunday at Mr. Singleton's, or a member of his family's, property.

33. Mr. Paul was initially paid $50.00 a day, $25.00 for a half day. That went up to $60.00 a day, $30.00 a half-day and finally to $70.00 a day, $35.00 a half day until his termination in September, 2015.

### Background Facts:  William Morales

34. Plaintiff William Morales (Mr. Morales) was hired by Defendant Singleton in approximately July, 2016.

35. He was hired to provide contractor and "handyman" services for Defendants.

36. Mr. Morales would help set up mobile homes on lots, would perform carpentry, plumbing, electrical and mechanical repairs for the rental units. He would paint, remove and install carpet, level the mobile homes and perform other necessary services on behalf of Defendants.

37. Mr. Morales would report to each morning at Singleton Mobile Homes Sales premises.

38. He would take direction concerning where and when to work by either Defendant Singleton or one of his staff.

39. He signed and signed out, reporting his hours on a daily basis. When he was late, Defendant Singleton or another staff member would warn him.

40. When a particular job was finished, Mr. Morales would return to Singleton Mobile Homes for another assignment.

41. When he did not have an assignment working on a particular mobile home or lot, Mr. Morales would perform work at Singleton Mobile Homes Sales premises.

42. Mr. Morales typically worked four days a week. He worked a number of weeks where he worked over forty hours in a workweek. His typical work schedule was from 8 a.m. until at least 6 p.m.

43. While his standard hours were 8 a.m. to 6 p.m., it was not uncommon for Mr. Morales to work until 8 or 9 p.m. if there was a problem with a rental until. In short, he worked until the job was done.

44. Mr. Morales was initially paid $50.00 a day, $25.00 for a half day.

45. Mr. Morales was injured on the job on or about November 9, 2016.

46. Mr. Morales filed a claim for Workers Compensation.

47. However, Defendants had no workers' compensation coverage for Mr. Morales as he was treated as an independent contractor.

48. Defendant Singleton attempted to pay Mr. Morales to avoid a Workers Compensation claim.

49. Mr. Morales refused and Mr. Singleton said to "never step foot on Mr. Singleton's property again."

50. Because he had no workers' compensation coverage, Defendants evicted Mr. Morales from the mobile home unit he was renting from Singleton Mobile Homes Sales.

## Count I: Failure to pay minimum wage

51. Plaintiffs, pursuant to Fed. R. Civ. P. 10(c), incorporates the factual allegations contained paragraphs 1 through 50 in Count I below.

52.     Under the Fair Labor Standards Act, 29 U.S.C. § 206 and the New Mexico Minimum Wage Act, 50-4-22, employees must be paid at least $7.25 and $7.50, respectively, an hour for each hour worked.

53.     Plaintiffs were employees of Defendants.

54.     Plaintiffs were directed by Defendant Singleton or one of his employees or staff on what to work on.

55.     Plaintiffs were directed to arrive at Defendants' premises each morning at a specific time.

56.     Plaintiffs were required to record their hours of work.

57.     Plaintiffs were told by Defendants where to work and what to do.  In short, Defendants controlled the manner and method of the work.

58.      Plaintiffs did not have an opportunity to make a "profit" or experience a "loss."  They were paid by the day, or half-day, on a pre-determined ten hour-plus workday.

59.     Plaintiffs were not in business for themselves.  They worked for Singleton Mobile Homes Sales and, with the exception of Defendant Morales, typically worked in excess of sixty hours in a work week.  Defendant Morales had a number of weeks where he worked in excess of 40 hours in a work week.

60. Plaintiffs work was on behalf of Defendants and their clients and customers doing business with Singleton Mobile Homes.

61. Plaintiffs were "employees" of Defendants.

62. Plaintiffs were entitled to be paid at least $7.25 an hour for all hours worked under the FLSA and a minimum of $7.50 an hour under New Mexico's MWA.

63. Plaintiffs Morales and Thompson were paid less than $6.00 an hour for all hours worked, often-times, substantially less than $6.00 an hour.

64. Plaintiff Paul was paid less than $7.00 an hour for all hours worked. Often-times he was paid substantially less than $7.00 an hour.

65. Defendants failure to pay Plaintiffs at least $7.25 an hour for all hours worked is in violation of the Fair Labor Standards Act, 29 U.S.C. § 206 and Defendants failure to pay Plaintiffs at least $7.50 an hour is a violation of the New Mexico Minimum Wage Act, 50-4-22.

## Count II: Failure to pay overtime

66. Plaintiffs, pursuant to Fed. R. Civ. P. 10(c), incorporates the factual allegations contained paragraphs 1 through 65 in Count II below.

67. As non-exempt employees, Plaintiffs must be paid 1 ½ times their "regular rate" of pay for all hours worked in excess of forty hours under the Fair

Labor Standards Act, 29 U.S.C. §207 and New Mexico Minimum Wage Act, NMSA 1978, §50-4-22(D).

68. Plaintiffs Paul and Thompson always worked in excess of forty hours in a workweek and often-times worked over sixty hours in a work week and sometimes over seventy hours in a work week. Plaintiff Morales occasionally worked in excess of forty hours in a workweek.

69. None of the Plaintiffs were paid overtime for any hours worked over forty in a workweek.

70. Defendants failure to pay overtime rates of pay to the Plaintiffs for all hours worked in excess of forty in a workweek violates both the Fair Labor Standards Act and New Mexico Minimum Wage Act.

### Count III: Retaliation against Plaintiffs Thompson and Morales

71. Plaintiffs, pursuant to Fed. R. Civ. P. 10(c), incorporates the factual allegations contained paragraphs 1 through 70 in Count III below.

72. Under the Fair Labor Standards Act, 29 U.S.C. §215(a)(3), New Mexico Minimum Wage Act, NMSA 1978, §50-4-26.1, and New Mexico common law retaliatory discharge, an employer cannot fire an employee for demanding and trying to protect and obtain his rights under the FLSA and New Mexico MWA.

73. New Mexico has a strong public policy protecting employees for exercising their rights to minimum wage and overtime pay, and also protecting employees from being falsely characterized as independent contractors for the purpose of defeating employee statutory protection to minimum wage, overtime and workers' compensation.

74. Defendants violated federal and state statutes as well as New Mexico retaliatory discharge common law by terminating Plaintiffs Thompson and Morales for exercising their rights under the FLSA and New Mexico MWA and New Mexico Workers Compensation laws.

75. Defendants conduct in terminating the Plaintiffs was intentional and with willful disregard of plaintiffs' rights.

76. Plaintiffs have suffered damages as a result of Defendants illegal actions.

## Demand for Jury Trial

Plaintiff Demands a trial by jury on all matters triable to a jury.

## Prayer for Relief

WHEREFORE, Plaintiffs respectfully requests this court enter judgment in favor of Plaintiffs and against Defendants for an amount to be proven at trial, including compensatory damages, liquidated damages, statutory damages, punitive

damages, pre and post judgment interest, attorney's fees, costs, injunctive relief, order an accounting and for such further relief as may be just.

>Respectfully submitted,
>
>WAYNE R. SUGGETT ATTORNEY AT LAW, P.C.
>
>By:____/s/ Wayne R. Suggett_____
>    WAYNE R. SUGGETT
>    Albuquerque Plaza
>    201 Third Street N.W., Suite 1720
>    Albuquerque, New Mexico  87102
>    Telephone: (505) 767-9804
>    Facsimile (505) 246-0707
>    e-mail: wayne@suggettlaw.com

and,

>Kristin Harrington
>413 N. Auburn
>Farmington, New Mexico 87401
>Telephone: (505) 564-4789
>Facsimile: (505) 564-4776
>e-mail: kharrington.law@gmail.com

Attorneys for Plaintiffs